Case No. 25-3035

---

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

THERESA A. KOVACS

Plaintiff-Appellant

v.

UNIVERSITY OF TOLEDO

Defendant-Appellee

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

REPLY BRIEF OF APPELLANT THERESA A. KOVACS

---

Ellen M. Kramer (0055552)
emk@crklaw.com
Joshua R. Cohen (0032368)
jcohen@crklaw.com
Cohen Rosental + Kramer LLP
3208 Clinton Avenue
One Clinton Place
Cleveland, Ohio 44113
Phone: (216) 815-9500
Fax: (216) 781-8061

Counsel for Appellant

Oral Argument Requested

i

# Table of Contents

Table of Contents ................................................................. ii

Table of Authorities ............................................................. iii

I.    Procedural Posture Restated ........................................... 1

II.   The University's argument about waiver by Kovacs is misplaced ............... 3

IV.  The District Court's ruling on the Motion for Reconsideration did not correct its prior error. ...................................................... 5

V.   Administrative agency deference is not an issue in this case ......................... 7

VI.  The District Court did not err in finding Kovacs engaged in protected activity. ............................................................................ 8

  A. Kovacs opposed an unlawful employment practice. ..................................... 9

  B. Kovacs acted in good faith. ........................................................ 12

  C. None of the cases to which the University cites support its argument that Kovacs did not engage in protected activity. ................................. 13

VII.  The University's purported legitimate non-discriminatory reason for Kovacs's termination is pretextual. .......................................... 16

  A. The University's purported legitimate reason for termination was insufficient. .......................................................................... 17

  B. The University's purported legitimate reason had no basis in fact. ............. 18

  C. Concern about Kovacs's being used a comparator to Davis, Chapman and Wynn is what actually motivated Kovacs's termination. ........................... 20

  D. The University's rationales have shifted. ........................................ 22

  E. The University is not insulated by the "Honest Belief" Rule ..................... 23

VII.  Kovacs established a causal connection. ...................................... 25

CONCLUSION ............................................................................ 26

CERTIFICATE OF COMPLIANCE ............................................................. 28

CERTIFICATE OF SERVICE ................................................................ 29

ADDENDUM ............................................................................... 30

# Table of Authorities

## Cases

*Allen v. Detroit Diesel Remfg., LLC*, Case No. 2:15-cv-2825, 2017 WL 4342155, *6-7 (S.D. Ohio Sept. 28, 2017) ..................................................................24

*Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021) ................. 16, 17, 23

*Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010)..............9

*Chapman v. University of Toledo* .........................................................................21

*Davis v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 2022 WL 860436, *7...................................................................................................................3

*Dugandzic v. Nike, Inc.*, 807 Fed.App'x 971, 976 (11th Cir. 2020) .........................3

*E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015)...................9

*Harman v. Honeywell Intelligrated*, 2024 WL 4117026, *3 (6th Cir. Aug. 15, 2024)...........5

*Haydar v. Amazon Corp., LLC*, No. 19-2410, 2021 WL 4206279, at *6 (6th Cir. Sept. 16, 2021) ................................................................................................9

*Hieber v. Oakland Cty., Michigan*, 2025 WL 1232901, *11 (6th Cir. Apr. 29, 2025) ................................................................................................................ 16, 23

*Higbee v. Billington*, 293 F.Supp.2d 132, 134 (D.D.C. 2003) ..................................4

*Jackon v. Genesee Rd. Comm'n*, 999 F.3d 333, 344-45 (6th Cir. 2021)...................9

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) ..........................9

*Kelly v. Lambda Research, Inc.*, 89 Fed.Appx. 535, 542 n.7 (6th Cir. 2004)............3

*Loper Bright Enter. v. Raimondo*, 144 S.Ct. 2244 (2024) ........................................7

*Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023)..........................................3

*Pelcha v. MW Bancorp*, 988 F.3d 318, 327 (6th Cir. 2021)......................................17

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150(2000) ................3

*Ruiz-Fane v. Tharp*, 545 F.Supp.3d 543, 557 (N.D. Ohio 2021)...............................9

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ...........................5

*Simpkins v. Boyd County Fiscal Court*, 2022 WL 14446819, *10 (6th Cir. 2022) ..............5

*Smith v. Chrysler Corp.*, 155 F.3d 799, 807-08 (6th Cir. 1998)...............................24

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ......................................17

*Thompson v. Fresh Products, LLC*, 985 F.3d 509 (6th Cir. 2021) ...........................17

*Wynn v. University of Toledo*, Case No. 24-3586......................................................21

*Zenian v. Dist. Of Columbus*, 283 F.Supp.2d 36, 39 (2003) .....................................4

## Statutes

42 U.S.C. § 2000e-3(a) ..............................................................................................9

Title VII...............................................................................................................9, 14

**Rules**

F.R.E. 803(8) ..................................................................................... 5, 6, 7

**Treatises**

30B M. Graham *Federal Practice and Procedure* § 7049 (2006)............................5

This appeal is from the District Court's grant of summary judgment to Appellee/Defendant University of Toledo (the "University") on Plaintiff/Appellant Theresa A. Kovacs's ("Kovacs") claim that she was terminated in retaliation for engaging in protected conduct.  In its Appeal Brief the University mischaracterizes the record and presents several misleading legal arguments.

Significantly there are several material facts which are never disputed by the University.  The University does not dispute that Kovacs was terminated 6 days after it was announced that she was the new HR specialist for the University's CFO.  Nor does it dispute that Kovacs's termination was less than two weeks after the University's President and several other high-level employees were informed by Dreyon Wynn that Kovacs would be used a comparator by three recently terminated African American employees.

Kovacs was fired because she was white.  The University thought it could protect itself from the race discrimination charges from the three African American employees if it also terminated a recently-demoted white HR Director – Kovacs. Race and retaliation were factors in the University's adverse actions against Kovacs.

## I.    Procedural Posture Restated

On January 10, 2024, the District Court granted the University's MSJ on Kovacs's unlawful retaliatory termination claim and denied it on her unlawful retaliatory demotion claim.  Opinion, RE 34, Page ID # 2767.  In reaching these

conclusions, the District Court reviewed the four required elements of a retaliation claim, and noted that it was the University's contention that Kovacs could not show two of these four elements – 1) that Kovacs had engaged in protected activity and 2) that there was a causal connection between the protected activity and Kovacs's termination. *Id.* at 2754-55. The District Court found that Kovacs established all four elements of her demotion claim but failed to demonstrate the causal connection element of her termination claim. *Id.* at 2760, 2764.

As the District Court found that Kovacs established a prima facie case of retaliation on her demotion claim, it also addressed the question of whether Kovacs established that the University's legitimate, non-retaliatory reasons for her demotion were pretextual and found in favor of Kovacs on this question. *Id.* at 2766. But since it had already found in the University's favor on the causal connection element of Kovacs's termination claim, the District Court did not address whether the University established a legitimate, non-retaliatory reason for Kovacs's termination. *Id.* At no point in the District Court ruling on the MSJ is Kovacs's OCRC Probable Cause Finding mentioned. *Id.*

Kovacs's case was set for a trial on Kovacs's demotion claim in February 2025. Trial Order, RE 51, Page ID# 2865. That trial did not take place because Kovacs dismissed her demotion claim in January 2025, setting up this appeal. Stip. of Dismissal, RE 63, Page ID # 2938.

## II.     The University's argument about waiver by Kovacs is misplaced

The University's effort to argue that Kovacs waived the causal connection argument by failing to raise it in connection with the OCRC Probable Cause Finding is misplaced.  While legal arguments can be waived, relevant evidence presented to a court cannot be ignored.  Kovacs is contending that the District Court erred when it failed to consider her OCRC Probable Cause Finding; factoring the Probable Cause Finding into its MSJ analysis would have resulted in a finding in favor of Kovacs on the causal connection element of her termination claim.

Among the issues appealed by Kovacs is whether the District Court committed reversible error by failing to consider in ruling on the University's MSJ all of the relevant evidence presented to it, including the Probable Cause Finding. The answer to this question is yes.

Courts must assess **all evidence in the record** in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150(2000) (emphasis added); *Kelly v. Lambda Research, Inc.*, 89 Fed.Appx. 535, 542 n.7 (6th Cir. 2004); *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023).  If a district court does not consider all relevant evidence in granting summary judgment, summary judgment should be reversed.  *Davis v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 2022 WL 860436, *7 (citing *Dugandzic v. Nike, Inc.*, 807 Fed.App'x 971, 976 (11th Cir. 2020)).

It is undisputed that Kovacs's Brief in Opposition to the MSJ mentions the Probable Cause Finding.  Brief in Opp. RE 31, Page ID # 2702-03, 2711, 2716; University's Appeal Brief, RE19, PageID#28-29.  The University did not object to Kovacs's references to the Probable Cause Finding, and instead just ignored its existence in its MSJ and Reply.  The parties also agree that the District Court makes no mention of the Probable Cause Finding in its ruling on the MSJ.  University Appeal Brief, RE19, Page ID # 28-29.  As Kovacs presented the Probable Cause Finding both in her Complaint and her Brief in Opposition to the MSJ, the University's contention that she waived this "argument" can be dismissed.

### III.  The University waived its opportunity to demonstrate the untrustworthiness of the Probable Cause Finding.

If any party to this appeal should be concerned about waiver it is the University, not Kovacs.  Despite the University's failure to mention the Probable Cause Finding in either its MSJ or Reply Brief, the District Court erroneously found in the University's favor anyway when it failed to consider the Probable Cause Finding.

Failing to consider the Probable Cause Finding is an error as the Court had an independent obligation to assess the trustworthiness of the findings.  *Higbee v. Billington*, 293 F.Supp.2d 132, 134 (D.D.C. 2003) (quoting *Zenian v. Dist. Of Columbus*, 283 F.Supp.2d 36, 39 (2003)).  The University's failure to argue that the Probable Cause Finding was not trustworthy in its MSJ or Reply Brief precludes the

University from doing so now. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

## IV. The District Court's ruling on the Motion for Reconsideration did not correct its prior error.

The Federal Rules of Evidence ("F.R.E.") 803(8) hearsay exception for public reports is based on the assumption that public officers will perform their duties and lack motive to falsify records and that public inspections of those reports will disclose inaccuracies. 30B M. Graham *Federal Practice and Procedure* § 7049 (2006). Thus, the intent of the trustworthiness exception to F.R.E. 803(8) is to analyze the source of the information used by the public office and the circumstances surrounding the government report. *Id.*

The University had the burden of establishing that the Probable Cause Finding was not trustworthy, and failed to do so. *Harman v. Honeywell Intelligrated*, 2024 WL 4117026, *3 (6th Cir. Aug. 15, 2024) (quoting F.R.E. 803(8)); *Simpkins v. Boyd County Fiscal Court,* 2022 WL 14446819, *10 (6th Cir. 2022).

The District Court's reasons for deeming the OCRC Probable Cause Finding untrustworthy in its ruling on the Motion for Reconsideration do not reflect what the drafters of F.R.E. 803(8) considered relevant to determining

trustworthiness, *i.e.*, the circumstances surrounding its preparation and its sources of information.[1]

Rather, the two points relied on by the District Court to establish the lack of trustworthiness of the Probable Cause Finding do not actually succeed in doing that. First, the District Court stated that the Probable Cause Finding implied that temporal proximity was established by a January 26, 2021 phone call. Second, the District Court found that the Probable Cause Finding "conflated" race and retaliation discrimination in a way that is likely to be unhelpful and confusing to a factfinder.

Contrary to the University's assertions, the Probable Cause Finding does not imply that Wynn's January 26, 2021 communications are the relevant protected activity. In fact, the Probable Cause Finding specifically identifies all Kovacs's protected activity as occurring in October of 2020. Complaint, RE 1-6, Page ID # 32-33.

Moreover, the District Court actually never stated that the OCRC improperly made such a finding. Rather, the District Court determined that the Probable Cause Finding was untrustworthy simply because it appeared to imply that the January 26, 2021 discussion between Wynn and McKether was the protected

---

[1] Stating that the Probable Cause Finding is largely hearsay is not only legally incorrect due to F.R.E. 803(8), the source of the information relied on by the OCRC generally was not hearsay as it primarily consisted of witness interviews conducted by an OCRC investigator.

activity.[2]   Order, RE40, PageID# 2804.  A close reading of the Probable Cause Finding, however, shows that the OCRC never directly or indirectly deemed that the January 26 communication was the protected activity which was the source of Kovacs's retaliation.

The District Court's statement that the Probable Cause Finding implied that the protected activity was the January 26, 2021 phone call is off base.  Moreover, its finding that it should be disregarded because it is likely to be confusing to a factfinder is not the proper standard to be used in ruling on a dispositive motion. *United States Fire Ins. Co. v. City of Warren*, No. 10-cv-13128, 2012 WL 13006156, *4 (E.D. Mich. June 12, 2012).

## V.    Administrative agency deference is not an issue in this case

The University's deference argument is a misplaced attempt to bring the U.S. Supreme Court's 2024 change to long-standing deference precedent into the mix. In *Loper Bright Enter. v. Raimondo*, 144 S.Ct. 2244 (2024), the Supreme Court held that federal courts are not required to defer to governmental agencies' reasonable interpretations of laws.  Notably, *Loper Bright* never mentions the law relevant to this appeal - F.R.E. 803(8).  *Id.*

---

[2] The January 26 communications show pretext, *i.e.*, that what actually motivated Kovacs's termination was concern about Kovacs being used as a comparator to several African American employees in the HR Department who had recently been fired.

The issue before this Court is **not** whether the District Court erred in failing to defer to the Probable Cause Finding; it is whether the District Court erred in failing to **<u>consider</u>** the Probable Cause Finding which was part of the evidentiary record presented in connection with the University's MSJ.

The University cites this Circuit's decision in *EEOC v. Ford Motor Co.*, 98 F.3d 134, 1996 WL 557800 (6th Cir. 1996) (table) to support its deference contention. *EEOC v. Ford*, however, involved a request to introduce an EEOC determination as evidence at trial, not on summary judgment and, therefore, did not involve the same question as that before the Court today.  Further, a primary rationale for the *Ford Motor* ruling was that the plaintiff was able to present the live testimony of witnesses and inclusion of documents.  *Id.*  This rationale clearly limits the relevancy of *EEOC v. Ford* to a trial issue, not a ruling on summary judgment.

## VI.    The District Court did not err in finding Kovacs engaged in protected activity.

The University's contention that Kovacs did not engage in protected activity is bizarre as it ignores all of the evidence provided to the District Court about Kovacs's communications regarding Equal Employment Opportunity ("EEO") laws and disparate impact on minorities and non-white applicants, which are clearly protected activity.  While it is true that Kovacs also objected to the Tracey Brown Proposal because of union and OFCCP issues, there is ample evidence that she objected to that Proposal on other grounds.

"Title VII anti-retaliation provision states that an employer cannot discriminate against an employee for "**oppos[ing] any practice made an unlawful employment practice**." 42 U.S.C. § 2000e-3(a).  The provision covers 'not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices.'" *Ruiz-Fane v. Tharp*, 545 F.Supp.3d 543, 557 (N.D. Ohio 2021) (quoting *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015)).  The opposition of any act that an employee reasonably believes to be a violation of Title VII constitutes protected activity.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).

Examples of activity protected under Title VII include complaining about "allegedly unlawful practices" to a manager.  *Jackon v. Genesee Rd. Comm'n*, 999 F.3d 333, 344-45 (6th Cir. 2021) (quotation omitted).  "Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue.'" *Haydar v. Amazon Corp., LLC*, No. 19-2410, 2021 WL 4206279, at *6 (6th Cir. Sept. 16, 2021) (citing *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010)).

A.    **Kovacs opposed an unlawful employment practice.**

1. **Communications with Taylor**

On several occasions in October of 2020 Kovacs alerted University management that unlawful discrimination was an issue with the Tracey Brown

Proposal.  On October 5, 2020, Sabrina Taylor called Kovacs to check on the status of the Brown Proposal.  Kovacs Depo. Trans., RE 14-1, Page ID # 231-34.  In this call Kovacs told Taylor that there were problems with the Brown Proposal in connection with the union, the OFCCP, **Equal Employment Opportunity laws and disparate impact on minorities or non-white applicants.**  Kovacs's Declar., RE 30-1, Page ID # 2669; Kovacs's Depo., RE 14-1, Page ID # 236-39.

### 2.  Communications with Schroeder

Schroeder and Kovacs spoke on the phone about the Tracey Brown Proposal the following day, October 6.  Schroeder Depo., RE 17-1, Page ID # 960.  In this conversation Kovacs warned Schroeder about OFCCP requirements, **EEO laws and disparate impact on minorities or non-white applicants.**  Kovacs Declar., RE 30-1, Page ID # 2669.  Kovacs and Schroeder spoke about the Brown Proposal again on October 12, 2020, when Kovacs again explained the various issues associated with the Tracey Brown proposal, including OFCCP requirements, **EEO laws and disparate impact on minorities or non-white applicants**.  *Id.*

### 3.  Communications with Elliott

On October 20, Kovacs sent Elliott an email in which she wrote the following:

> **Moving Tracey to the contract specialist position at this time places UToledo in a compromising legal position as she does not meet the minimum (basic) qualifications.  Promoting an employee that does not meet the minimum qualifications goes against EEO.** To keep the process fair and equitable, the OFCCP states to help keep everybody on the same page, carefully craft a job description for the

position, not for a person you would like to promote. The OFCCP also states the basic qualifications which an applicant must possess means qualifications that the employer advertised to potential applicants or criteria which the employer established in advance.

**To avoid potential disparate impact (disparate impact is often referred to as unintentional discrimination), nonetheless, our practices must be uniformly and consistently applied.**

Elliott Depo., RE 15-1, Page ID # 649-51, 709-10.

On or about that same day, Kovacs, Toth, Elliott and Wynn also spoke about the Tracey Brown Proposal. Kovacs's Depo., RE 14-1, Page ID # 264. In this conversation Kovacs repeated the same concerns she had mentioned in the email she had sent to Elliott, including that what Toth proposed doing **would violate EEO laws and have a potential disparate impact, also known as unintentional discrimination.** *Id.* at 265-66.

The University incorrectly states that the only thing Kovacs can recall from her October 20 conversation with Elliott, Toth and Wynn is moving Tracey Brown's position without a search. University's Appeal Brief, RE 19, Page ID # 46. However, Kovacs actually testified that she could not recall "how or in what manner" she "elaborated" on disparate impact in that call, not that the only part of the call she remembered was the absence of a search. Kovacs's Depo., RE 14-1, Page ID # 265-66. Kovacs, moreover, has ample documentary evidence that she communicated her concern about EEO laws and disparate impact on minorities and non-white

applicants to Toth, Schroeder, Elliott and other University employees. Elliott Depo., RE 15-1, Page ID # 649-52, 707-14.

The University also argues that Kovacs did not establish she was engaged in protected activity because Kovacs was attempting "to enforce a job posting requirement in a potentially non-existent conciliation agreement." University's Appeal Brief, RE 19, Page ID # 41. In making this statement, however, the University conveniently ignores Kovacs's numerous statements about Equal Employment Opportunity and the avoidance of disparate impact or unintentional discrimination. Elliott Depo., RE 15-1, Page ID # 649-51, 709-10.

## B.    Kovacs acted in good faith.

The University's other argument that Kovacs did not establish protected activity is that Kovacs could not have a good faith belief that a job posting requirement was in effect because OFCCP regulations contain no such requirement. University's Appeal Brief, RE 19, Page ID # 49.

In making this argument, however, the University is forced to ignore several significant facts. The first is that the University's own witnesses acknowledge that this job posting policy was in effect in 2020. In fact, the reason Toth reached out to HR to begin with about Tracey Brown was because he did not want to follow the University's posting policy and instead was requesting a **search waiver**. Schroeder Depo., RE 17-1, Page ID # 976-77, 1020-21, 1025-26 (emphasis

added).  In response to Toth's original request relating to Brown, the University's HR Department advised him that he needed "search waiver approval to not post and move Tracy [sic] into new position." *Id.* at 1020.  Thus, Kovacs, Toth and Schroeder all knew about the University's job posting policy.  Further, the University has its own policy which requires that positions be posted even when filled internally.[3]

As the University clearly had its own job posting requirements, its argument that Kovacs could not have had a good faith belief about this job posting policy is spurious.

### C. None of the cases to which the University cites support its argument that Kovacs did not engage in protected activity.

The University contends that a number of decisions show that Kovacs's October 2020 activity was not protected.  Each of the rulings cited by the University involves materially different facts than those at issue in this proceeding and therefore do not establish that her conduct was not protected.

Kovacs's situation is easily distinguishable from the activity the Sixth Circuit rejected as protected conduct in *Khalaf* because it did not take an overt stand against suspected unlawful discriminatory conduct.  *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489-90 (6th Cir. 2020).  The *Khalaf* plaintiff's alleged protected activity

---

[3]

https://www.utoledo.edu/policies/administration/humanresources/pdfs/3364_25_11 3.pdf.

was a direction to a female subordinate to send a claim to HR about a heated discussion she had with another male employee. Neither the HR submission nor subsequent emails about the heated discussion mention sexual discrimination or harassment. *Id.* at 476-77. Kovacs's activity differs as it specifically mentions EEO laws, protecting minorities or non-white applicants, and disparate impact and unintentional discrimination. Kovacs's communications are an overt stand against what she suspected was unlawful discriminatory conduct.

While the University conveniently fails to mention it, there was both written and verbal activity at issue in *Johnson v. Cuyahoga County*, Case No. 1:21-cv-02109, 2023 WL 1469465, *9 (N.D. Ohio Feb. 2, 2023). The verbal statement by the *Johnson* plaintiff (which was disputed by another employee) was that she felt she was being treated differently because she was black, and the *Johnson* court held that this verbal activity WAS protected by Title VII because it could be reasonably construed as a charge of discrimination. *Id.* at *9.

Johnson's written statement – which was held to not be protected activity - was primarily a list of complaints about changes which had occurred with the plaintiff's job after a new manager was appointed, and never mentioned unlawful discrimination or race. *Id.* at *3. The court reasoned that the written activity was not protected because it was construed to be a "mere complaint" regarding management decisions, not a statement alleging unlawful employer activity. *Id.*

Kovacs's communications, however, are distinguishable because they protest Toth's Tracey Brown proposal due to its potential for disparate impact on minorities and non-white applicants.

Nor does *Arredondo* help the University. *Arredondo* found that plaintiff's verbal statement that a black employee's termination was unfair without more did not put his employer on notice that he was opposing race discrimination. *Arredondo*, 2022 WL at *11 (citations omitted). The rationale was that a complaint about general unfairness is not a protected activity without additional communication that the unfairness relates to a protected class. *Id.*

Kovacs's communications – unlike Arredondo's – specifically mention non-whites, minorities, disparate impact, Equal Employment opportunity and unintentional discrimination. Her activity is not merely about general unfairness.

Although the University attempts to rely on *Joseph v. McDonough*, 2022 WL 19837507 (6th Cir. Dec. 27, 2022) to support its argument that Kovacs did not engage in protected activity, it is important to note that there is only a vague description of the communications at issue in Joseph. *Id.* at *3. The *Joseph* plaintiff claimed that she engaged in protected activity when she sent an email in support of a nurse manager who was under investigation and when she supported a grievance filed by a nurse's aide about discipline relating to the aide's failure to set a bed exit

alarm.  *Id*.  As neither of these acts by the *Joseph* plaintiff mention a discriminatory employment practice, *Joseph* does not support the University's position.

The *Long*s plaintiff's general complaints of discrimination neither referred to a protected class nor facts sufficient to create such an inference and were, therefore, found not to be protected activities.  *Longs v. Ford Motor Co.*, 647 F.Supp 2d 919, 933 (W. D. Tenn. 2009).  Kovacs's communications to the University are distinguishable as she presents facts to support her claim – that waiving the search required and promoting Tracey Brown when she did not meet the position's minimum qualifications as Toth proposed violated EEO Laws.  *Longs* is not helpful to the University either.

## VII.  The University's purported legitimate non-discriminatory reason for Kovacs's termination is pretextual.

The University's Brief devotes a lot of space to its legitimate, non-discriminatory explanation of why Kovacs was demoted.  However, as Kovacs dismissed her demotion claim this information is irrelevant.

A plaintiff satisfies the burden of establishing pretext at summary judgment "by providing enough evidence for a reasonable factfinder to reject the employer's legitimate, nondiscriminatory reason."  *Hieber v. Oakland Cty., Michigan*, 2025 WL 1232901, *11 (6th Cir. Apr. 29, 2025) (citing *Briggs v. Univ. of Cincinnati*, 11 F.4[th] 498, 515 (6th Cir. 2021)).  Pretext may be shown by demonstrating that the employer's reason: (a) had no basis in fact, (2) was insufficient to motivate the

adverse employment action; or (3) did not actually motivate the adverse employment action. *Thompson v. Fresh Products, LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (quotation omitted). Providing shifting rationales also can show pretext. *Pelcha v. MW Bancorp*, 988 F.3d 318, 327 (6th Cir. 2021).[4]

The University's purported legitimate reasons for Kovacs's termination are pretextual because they had no factual basis, were insufficient to motivate Kovacs's firing, were not what actually did motivate the firing and shifted significantly. *See Briggs*, 11 F.th at 515 (quotation omitted).

### A. The University's purported legitimate reason for termination was insufficient.

Apparently Elliott and Hurst fired Kovacs because Kovacs told another University employee in early 2021 that she was not busy and had ample time to work part-time on labor relations issues. Ziviski Declar., RE 18-1, Page ID # 1076. While many employers would appreciate such a show of initiative from an employee, the University appears to be the rare employer who does not. According to the University, Kovacs's comment that she was not busy "could not have been further

---

[4] The University misleadingly states that Kovacs must show both that the University's proffered legitimate, non-discriminatory reason was false and that retaliation was the real reason, citing to *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). University's Appeal Brief, RE 19, Page ID # 60. This statement does not actually appear in the *St. Mary's* decision.

from the truth … her area was understaffed and drowning in work."  Beck Declar., RE 18-2, Page ID # 1080.  The HR employees in Kovacs's area were "extremely busy", and Kovacs had "plenty of work."  Ziviski Declar., RE 18-1, Page ID#1076; Hurst Depo., RE 16-1, Page ID # 790

Firing an 18-year employee with no disciplinary history and a recent positive performance evaluation at the same time her Department is "drowning" with work defies logic and shows that the University's purported legitimate reason for the firing is not credible and was insufficient.

**B. The University's purported legitimate reason had no basis in fact.**

There are numerous factual disputes surrounding the University's purported legitimate reason for Kovacs's termination.  Hurst's testimony about Kovacs' performance is especially problematic for the University as almost all of the reasons Hurst gives for terminating Kovacs is contradicted by Kovacs, Reinhart, Fahey, Fisher and documentary evidence.  For example, while Kovacs may have informed her new supervisor Melissa Hurst that required performance evaluations for her team were late, Kovacs explained to Hurst that the delay was because Kovacs had been out on extended FMLA leave for cancer in 2019 and 2020.  Kovacs Declar. RE 25-1, Page ID # 2615.  This critical fact is conveniently omitted by the University.

Kovacs disputes Hurst's assertion that she had not instituted any professional development or guidance plans for her team.  Not only did Kovacs disagree with

this, University employees Fahey and Fisher stated that Kovacs assisted them with development plans, and provided other team members with the same.  Mtn. Judicial Notice, RE 22-1, Page ID # 1320; Fisher Declar., RE 25-2, Page ID # 2617-18.

Kovacs disputes Hurst's representation that she would not attend meetings, was frequently out of the office and requested to work remotely.  Kovacs's Declar., RE 25-1; Page ID # 2615.  According to Kovacs she never missed a meeting during the time she worked with Hurst, nor did she ever ask to work remotely.  *Id*.  Kovacs refutes Hurst's claim that she prompted Kovacs on several occasions to complete the PAR report.  *Id*.  And since this Report was not due until after  Kovacs's termination, her supposed delay could not have been a reason for her discharge.  *Id*.

Hurst testified that Kovacs was fired because one of Kovacs's direct reports, Fisher, "could not do anything" and "did not understand" his role.  Hurst Depo., RE 16-1, Page ID # 791.  Hurst's testimony about this, however, is not credible.  Shortly after Kovacs was fired, Hurst offered Fisher a retroactive pay raise because she wanted to see Fisher "continue to develop his talents" and stay at the University.  Postel Depo. RE 20, Page ID # 1265.  Employers do not offer retroactive pay raises to an employee who allegedly "could not do anything."

Employees who had worked with Kovacs for much longer than Elliott or Hurst found Kovacs to be "a strong leader," an "outstanding supervisor and mentor" and "very approachable."   Reinhart, Fahey and Fisher all stated that Kovacs

maintained a positive attitude after her demotion and continued to make herself available.  Fisher Declar., RE 25-2, Page ID # 2618; Reinhart Declar., RE 29, Page ID # 2662.

Hurst ascribes Kovacs' failure to train University employee Reinhart as a reason for the adverse action, but Reinhart states that she never complained to Hurst that she blamed a lack of training on Kovacs.  Reinhart Declar., RE 29, Page ID # 2662.

Kovacs presented ample evidence that the University's purported reason for firing her was not true.

### C. Concern about Kovacs's being used a comparator to Davis, Chapman and Wynn is what actually motivated Kovacs's termination.

Kovacs presented evidence to show that her termination on February 9 occurred because Wynn alerted the University that the University administrator overseeing the HR Department, Schroeder, was racist and that Kovacs's demotion on November 6 would have been a termination if Kovacs was not white.  On January 26, 2021, Wynn raised this issue in a phone call with McKether, who in turn spoke to University President Postel on January 28, 2021, about the "HR Terminations." Elliott Depo. RE 15-1, Page ID # 716.  Kovacs was fired out of the blue 12 days after, being told at the time only that the University was going in a different direction. Her termination suspiciously occurred a mere six days after an announcement was made that Kovacs would be the Finance Department's assigned HR specialist.

The University points out that the lawsuits filed by the three African American employees Wynn alerted McKether about in late January 2021 have not yet resulted in verdicts against the University.[5] Two of these three cases are currently on appeal to this Court – *Wynn v. University of Toledo*, Case No. 24-3586 and *Davis v. University of Toledo*, Case No. 25-3296. The third case, *Chapman v. University of Toledo*, was dismissed for procedural reasons, so the question of whether Chapman was unlawfully discriminated against was never addressed by a court. 2023 WL 8086742 (N.D. Ohio Nov. 21, 2023).

While the University may ultimately prevail in the Davis, Wynn and Chapman cases, its success will only be after much time, effort and legal fees are spent. Wynn, Chapman and Davis all submitted charges to the OCRC and filed lawsuits following OCRC proceedings. The University incurred more than $2,500 in deposition costs in each of Davis's and Wynn's cases, conducting several depositions in each proceeding.[6] Based on the lengthy filings in the Davis and Wynn

---

[5] The University states that Kovacs "conveniently" omitted mentioning these cases in her Appeal Brief. University's Appeal Brief, RE19, PageID# 33. Any insinuation of dishonesty by Kovacs related to this would not be proper, as the ruling in *Davis v. University of Toledo* was issued AFTER Kovacs filed her Brief in this proceeding. *Davis v. University of Toledo*, 2025 WL 843617 (N.D. Ohio March 18, 2025).

[6] *Davis v. University of Toledo*, N.D. Ohio Case No. 3:22-30-00301; Wynn v. University, N.D. Ohio Case No. 3:22-cv-1899.

cases and the pending appeals, the legal fees from defending these proceedings must be hefty.

Therefore, while the University ultimately may never have a judgment for violation of Title VII entered against it in any of these three cases, any "success" did not come without cost.

### D. The University's rationales have shifted.

The University's rationales also have shifted depending on who and when a rationale for Kovacs's termination has been provided. On February 9, 2021, Kovacs was terminated by Elliott[7] and only told that the University was "going in a new direction." Kovacs Depo., RE 14-1, Page ID # 341.

Five months later, in July 2021, the University stated to the OCRC that Kovacs was fired because she "was not engaged in her new role, was not receptive to Beck's new leadership role, and repeatedly told others that she was not busy," was not making efforts to mentor or transition members and asked to transfer to a labor

---

[7] Probably in an effort to place more distance between Kovacs's termination and Schroeder, the University's Appeal Brief states that Beck made the termination decision. University's Appeal Brief, RE 19, Page ID # 27. However, nowhere in the record is there evidence of this. Beck's Declaration does not state that he made that decision; instead Beck declares that Kovacs's statement about not being busy was the final straw for him, Hurst and Elliott and that "we" terminated her employment. Beck Declar., RE 18-2, Page ID # 1080. Neither Elliott nor Hurst ever testified that Beck made the termination decision on his own. Rather Hurst stated that they "collectively" recommended Kovacs's termination. Hurst Depo., RE 16-1, Page ID # 809. Elliott in turn testified that he was ultimately responsible for the termination. Elliott Depo., RE 15-1, Page ID # 593.

specialist position.  Elliott Depo., RE 15-1, Page ID # 693; Hurst Depo., RE 16-1, Page ID # 872.  In his July 2021 affidavit to the OCRC Elliott also attributed Kovacs's termination to her purported statement that she had ample time and could work part-time in labor relations.  Elliott Depo., RE 15-1, Page ID # 693.  Hurst testified that Kovacs was fired due to lack of engagement with her new team; lack of responsiveness to her new leader, Beck; and for telling Ziviski that she had nothing to do.  Hurst Depo., RE 16-1, Page ID # 843.

Providing shifting rationales for an adverse employment decision can show pretext.  *Pelcha*, 988 F.3d at 327.

### E.  The University is not insulated by the "Honest Belief" Rule.

The University contends that its adverse action with respect to Kovacs is insulated by the honest belief rule because its actions need to be analyzed "against the backdrop of HR modernization instituted by President Postel."

In order to be protected by the honest belief rule, a defendant must provide "'conclusive evidence that the defendant honestly believed its proffered reason, and that the belief was reasonably based on particularized facts that were before it at the time the decision was made.'"  *Hieber*, 2022 WL at *11 (quoting *Briggs*, 11 F4th at 515).  Moreover,

> Although courts should resist attempting to micro-manage the process used by employers in making their employment decision, neither should they blindly assume that an employer's description of its reasons is honest.  When an employee is able to produce sufficient evidence to

23

establish that an employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held.

*Allen v. Detroit Diesel Remfg., LLC*, Case No. 2:15-cv-2825, 2017 WL 4342155, *6-7 (S.D. Ohio Sept. 28, 2017) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807-08 (6th Cir. 1998)).

Kovacs' termination occurred without any documentary evidence showing anyone had problems with her performance. Moreover, the employees Kovacs had worked with for years (as opposed to the four months she had worked with Elliott) thought very highly of her. Fisher and Fahey describe Kovacs as a "strong leader", "very approachable," and an "outstanding supervisor and mentor." RE 22-1, Page ID # 1321; RE 25-2, Page ID # 2617-18. Reinhart found Kovacs to be accessible, knowledgeable and a team player. Reinhart Declar., RE 29, Page ID # 2662. They all considered Kovacs to be a good supervisor and mentor. *Id.*; RE 22-1, Page ID # 1320; RE 25-2, Page ID # 2618. Fahey observed no issues with Kovacs' work performance, found that Kovacs was "very approachable" and had a "very positive attitude. ECF# 22-1, Page ID # 1320. According to both Fahey and Fisher, Kovacs assisted them with development plans, and also provided other team members with development plans. RE 22-1, Page ID # 1320; RE 25-2, Page ID # 2617-18.

Kovacs' team was surprised when Kovacs was terminated.  RE 22-1, Page ID #1320.  RE 25-2, Page ID # 2618.  Fahey described Kovacs' termination as "out of left field."  RE 22-1, Page ID # 1320.  According to Reinhart, Fahey and Fisher, Kovacs did not change her attitude and remained positive after the demotion.  Fisher Declar., RE 25-2, Page ID # 2617; Mtn. Judicial Notice, RE 22-1, Page ID # 1320; Reinhart Declr., RE 29, Page ID # 2662.

The surprise of other employees who worked closely with Kovacs at her termination show that the University failed to make a reasonably informed and considered decision before terminating her.  As such, the University's decisional process is 'unworthy of credence,' and any reliance placed on that process cannot "be said to be honestly held."

## VII.   Kovacs established a causal connection.

The statement in the University's Brief that McKether does not recall anything about a late January 2021 conversation he had with University President Postel, other than making sure that Postel was aware of an email from Wynn about Wynn's termination is a misrepresentation of a material fact.  University Appeal Brief, RE 19, Page ID # 24.  McKether's actual testimony was that he did not recall exactly what Postel's response was upon being notified of Wynn's firing and ensuing threats but that **Postel stated that he would have a conversation with Matt [Schroeder]** and McKether "sensed" that Postel was concerned.  McKether Depo., RE 19-1, Page

ID # 1104 (emphasis added).  This distinction is important because it shows that it is likely Schroeder knew about Wynn's threat to use Kovacs as a comparator in his charges against the University.  Elliott, who terminated Kovacs, reported to Schroeder.  Elliott Depo., RE 15-1, Page ID # 582.

Schroeder testified that any mentions of disparate impact on minorities and non-white applicants were "red flags" to him and would definitely catch his attention.  Schroeder Depo., RE 17-1, Page ID # 962-63, 976-77.  That statement, combined with Postel's assurance that he would "have a conversation" with Schroeder, establish that it is highly unlikely Schroeder was not involved.

## CONCLUSION

The District Courts's decision to disregard relevant evidence in ruling on the MSJ by ignoring the Probable Cause Finding was error.  When the Probable Cause Finding is considered along with the constellation of other evidence provided by Kovacs there is a genuine issue of material fact on the causal connection element of Kovacs's termination claim.  The District Court ruling on summary judgment should be reversed, and this case remanded for trial.

Respectfully submitted,

<u>/s/ Ellen M. Kramer</u>
Ellen M. Kramer (0055552)
emk@crklaw.com
Joshua R. Cohen (0032368)
jcohen@crklaw.com
Cohen Rosental + Kramer LLP
3208 Clinton Avenue
One Clinton Place
Cleveland, Ohio 44113
Phone: (216) 815-9500
Fax: (216) 781-8061

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel for Appellant certifies that the foregoing **Reply Brief of Appellant Theresa A. Kovacs** complies with the type-volume of Fed.R.App.P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed.R.App.P. 32(f), according to the word count functions of Microsoft Word 365, the word-processing system used to prepare this brief, there are 6,483 words, including footnotes, in this Brief.

The undersigned counsel for Appellant also certifies that the foregoing Brief of Appellant Theresa A. Kovacs complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App.P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman in 14-point.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 6th day of May 2025, a copy of the foregoing **Reply Brief of Appellant Theresa A. Kovacs** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

/s/ Ellen M. Kramer
Ellen M. Kramer (0055552)

## **ADDENDUM**

| Record Entry Number | Record Item Description | Date Filed | Page ID Range |
|---|---|---|---|
| 18-1 | Ziviski Declaration | 08/14/2023 | 1076-1077 |
| 18-2 | Beck Declaration | 08/14/2023 | 1078-1081 |
| 19 | University's Appeal Brief | 04/16/2025 | 1-69 |
| 20 | Postel Deposition | 08/16/2023 | 1132-1268 |
| 29 | Reinhart Declaration | 10/03/2023 | 2662-2663 |
| 51 | Trial Order | 10/16/2024 | 2865-2869 |
| 63 | Stipulation of Dismissal | 01/17/2025 | 2938-2940 |